# City of Bessemer *v*. Eidge.

### *Habeas Corpus.*

(Decided April 9, 1909. Rehearing denied June 30, 1909. 50 South. 270.)

1. *Habeas Corpus; Party Aggrieved; Right of Appeal.*—Where one has been convicted of a violation of a city ordinance in a municipal court, and upon habeas corpus to another court is discharged, the city may appeal under section 6245, Code 1907, as the party aggrieved.

2. *Searches and Seizure; Ordinances; Constitutional Provision.*—An ordinance prohibiting the keeping of intoxicating liquor in any house, building or place, public or private, where people resort, for lawful or unlawful purposes, and providing for the seizure and confiscation of such liquor, and the arrest of any person suspected of violating the ordinance, with or without warrant is violative of section 5, bill of rights, Constitution 1901.

3. *Indictment and Information; Affidavit; Sufficiency.*—An affidavit as a basis for a warrant of arrest which states that the affiant has good reason to believe that an offense has been committed rather than that he has probable cause for believing that an offense has been committed, as is required by section 6703, Code 1907, is void.

(Dowdell, C. J., Denson and McClellan, JJ., dissent in part.)

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

W. S. Eidge was convicted for the violation of an ordinance of the city of Bessemer in its municipal court. Upon application to the city court of Bessemer, he was discharged upon a writ of habeas corpus, from which judgment the city appeals. Affirmed.

ESTES, JONES & WELCH, and BEN G. PERRY, for appellant. The city had the authority to pass ordinances to

prevent the storage of liquor.—Secs. 1251 and 1341, Code 1907; 17 A. & E. Ency of Law, 287. The liquors may be seized and destroyed.—23 Cyc. 292. Habeas corpus will not lie.—*Ex parte Bizzell,* 21 South. 371; *Bray v. The State,* 37 South. 250. The ordinance is valid.—28 N. H. 176; 38 N. H. 426; 134 Cal. 110; 33 L. R. A. 313; 10 L. R. A. 520; 96 Mich. 193; 45 N. J. L. 288; 17 A. & E. Ency of Law, 206, 207, 281, 287; 23 Cyc. 64, 66, 67, 75-78, 87-88, 174-5, 292-3.

T. T. HUEY, and G. F. GOODWYN, for appellee. The ordinance in question violates sec. 5, Bill of Rights. The city went beyond its powers in the passage of the ordinance.—*Norris v. Town of Oakman,* 138 Ala. 411; 42 S. W. 554; 15 A. & E. Ency of Law, 141. Warrant was void.—*Johnson v. The State,* 82 Ala. 29; *Butler v. The State,* 130 Ala. 127. Intoxicating liquors are property.—*Pike County Dispensary v. Brundidge,* 30 South. 451. The city council of Bessemer had no authority to provide for the confiscation of liquors.—23 Cyc. 292. The ordinance being void, petitioner was illegally restrained of his liberty and was properly discharged.— *Ex parte Burnett,* 30 Ala. 461; *Ex parte Mayor of Anniston,* 7 South..779; *Chappel v. The State,* 47 South. 329; *Brown Rigg v. Livingston,* 28 South. 616.

MAYFIELD, J.—Appellee was arrested, prosecuted, and convicted, and sentenced to hard labor, for violating an ordinance of the city of Bessemer, after which he was released and discharged by the judge of the city court of Bessemer on a writ of habeas corpus; such judge declaring the ordinance under which the prosecution was had, to be void. From that order or judgment the city of Bessemer prosecutes this appeal.

It is claimed by counsel that this appeal is taken under section 1220 of the Code of 1907; it being section 66

of the Municipal Code bill passed by the last session of the Legislature, of date August 13, 1907. If this were true, the appeal could not be entertained. That provision only applies to cases taken to the circuit or other courts of like jurisdiction by appeal from the municipal court, and not to proceedings like this, originating in the circuit court or before a judge of such court. But the appeal does lie under section 6245, Code 1907 (*Town of Elba v. Rhodes,* 142 Ala. 689, 38 South. 807); the city being "the party aggrieved" in this particular case.

The ordinance in question is clearly void. It not only exceeds the powers of the municipality, which is enough to render it invalid, but it probably exceeds the power of the Legislature itself. It attempts to prohibit the keeping of any spirtuous, vinous, malt, or intoxicating liquors, drinks, or beverages in any house, building, or place where people resort, public or private, for lawful or unlawful purposes, and then provides for the seizure and confiscation of such liquors, drinks, or beverages without due process of law, as well as for the arrest of any and all persons suspected of violating such ordinance with or without warrant. There is a futile attempt to comply with the Constitution and statutes, as to seizures, searches, and arrests, by section 5 of the ordinance; but it is wholly insufficient.

Section 5 of our own Bill of Rights provides "that the people shall be secure in their persons, houses, papers and possessions from unreasonable seizure or searches, and that no warrants shall issue to search any place or to seize any person or thing without probable cause, supported by oath or affirmation." The fourth amendment to the Constitution of the United States reads as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.   These provisions have been construed as follows:

Search warrants are not allowed for the purpose of obtaining evidence, but they should be allowed only after the evidence has been obtained.   There are exceptions to this rule, a few specific cases, where that which is the subject of the crime is supposed to be concealed, and the public has an interest in finding it and destroying it.   Such are searches for stolen goods, or for smuggled goods in violation of revenue law, and implements for gaming, counterfeiting, lottery tickets, liquors made in violation of revenue law or solid in violation of prohibition law, obscene books and papers, explosives, injurious materials, etc.   "It is oftentimes better that crimes should go unpunished than that citizens should be liable to have their premises invaded, their private books and papers exposed or destroyed at the hands of ignorant and suspicious men, under the direction of ministerial officers who may bring such persons as he pleases and who selects them on account of their physical courage rather than their sensitive regard for the rights or feelings of other people."—Cooley, Const. Lim. 372.

The common-law maxim, "Every man's house is his castle," is guaranteed by the constitutional provision of "the right of the people to be secure in their per son, houses, papers and effects against unreasonable searches and seizures," and that "no warrant shall issue except upon probable cause, supported by oath or affirmation, describing the place to be searched and the person or things to be seized."   It was said by Lord Chatham that "the poorest man in his cottage may bid defiance to all the forces of the crown; it may be frail;

its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the king may not enter, and all his forces dare not cross the threshold of the ruined tenement."

A search warrant must be issued only by a court of competent jurisdiction, it must be issued to the officer of the law and not to the aggrieved party, it can be granted only upon probable cause supported by oath or affirmation, and the warrant must describe the premises and the person or things to be taken.—Bishop, Crim. Proc. 240-246; Tiedeman's Lim. Pol. Pow. 462. "To enter a man's house by virtue of a warrant in order to procure evidence against him is worse than Spanish Inquisition, a law under which no Englishman would wish to live an hour," said Lord Camden. Search warrants may be issued for the release of females in houses of ill fame, for the recovery of children enticed away from their parents, and for the unlawful detention of any person. When it is to search for a person suffering from a dangerous or infectious disease, the warrant can be issued in aid of civil process.

Brickell, C. J., in the case of *Cunningham v. Baker*, 104 Ala. 169, 16 South. 70, 53 Am. St. Rep. 27, says: "As a general rule at common law an arrest could not be made without a warrant. If a felony was committed, or a breach of the peace threatened or committed, within the view of an officer authorized to arrest, it was his duty to arrest without warrant and carry the offender ·before a magistrate; or, if a felony had been committed, and there was probable cause to believe a particular person was the offender, he could be arrested without warrant.—*Holley v. Mix*, 3 Wend. (N. Y.) 350, 20 Am. Dec. 702; *Burns v. Erben*, 40 N. Y. 463. The matter of arrests is now the subject of statutory regulation, largely affirmatory of the rules of the common law.—Cr.

Code, §§ 4260, 4274. The statutes, and the corresponding rules of the common law, have primary, if not exclusive, relation to the administration of the criminal laws of the state. If an arrest be legal, under what conditions and for what purposes there may be a search of the person arrested, and what things found upon his person may be taken into possession by the officer making the arrest, was the subject of very full and deliberate examination and exposition in *Ex parte Hurn,* 92 Ala. 102, 9 South. 515, 13 L. R. A. 120, 25 Am. St. Rep. 23. A repetition of what is there said is not now necessary. A search of the person arrested is justifiable only as an incident to a lawful arrest. If the arrest be unlawful, the search is unlawful, and is aggravated by the illegality of the arrest."

And in the same book (page 171 of 104 Ala., page 71 of 16 South. (53 Am. St. Rep. 27) he says: "An officer cannot justify an arrest upon the ground that he had reasonable cause to believe the person arrested had committed a felony, unless he has information of facts, derived from those reasonably presumed to know them, which, if submitted to a judge or magistrate having jurisdiction, would require the issue of a warrant of arrest, and the holding of the accused to await further examination. \* \* \* An illegal arrest cannot be justified by facts subsequently ascertained; nor can an arrest made for one purpose be justified for another." '

It is needless for us to examine or search for the provisions of the statutes or the charters of the city, to see if the city is authorized to pass this ordinance, for the reason that, if such provisions exist, they are void. We do not think that the Legislature has attempted to confer such authority upon the city of Bessemer; but, if it has done so, the attempt would be void. The purpose of the Constitution was to prohibit the Legislature

from conferring authority upon municipalities inconsistent with the general laws of the state.—*Holt v. Birmingham,* 111 Ala. 369, 19 South. 735; *Hewlett v. Camp,* 115 Ala. 499, 22 South. 137.

The power of municipal corporations to make by-laws is limited by the federal and state Constitutions, and the by-laws must be in harmony with the general laws of the state and with the charters of the respective corporations. If they conflict with either they are void. By-laws of municipal corporations must also be reasonable and they must be certain, not left to the discretion of the officers or court which imposes penalty for violating them after conviction, and they should be in harmony with the general principles of the common law and with the statutes of the state.—*Mayor of Huntsville v. Phelps,* 27 Ala. 55, overruling *Mayor of Mobile v. Yuille,* 3 Ala. 137, 36 Am. Dec. 441; *Ex parte Burnett,* 30 Ala. 461; *Craig v. Burnett,* 32 Ala. 728; Cooley, Const. Lim. 240-242; *Milliken v. City Council,* 54 Tex. 388, 38 Am. Rep. 629.

Municipal corporations existed at common law, and they had there but few powers beyond those of electing their officers and removing their members. Such corporations might sue and be sued, might have a common seal, might hold property, personal and real, necessary for the corporate purposes, might convey the same, and might make by-laws necessary and proper. But as a rule the powers of these corporations are now conferred expressly or impliedly (and with a very few exceptions, such as incidental powers) by and from their charters or the general law under which they exist, and such charters and laws are the measure of authority to be exercised by such corporations. The trend of the courts has been to confine these corporations to the exercise of those powers only which were so granted by the char-

·ter, or necessarily implied therefrom, or that were in-
cidental to their existence. —Cooley on Const. Lim. 233,
234.

The general laws of this state as to spirituous, vinous,
malt, and intoxicating liquors are now numerous, and
may be said to be strict and stringent; but we have seen
none, general or local, as strict, stringent, and drastic as
this ordinance in question. The affidavit for the war-
rant of arrest in this case was void, and likewise was the
provision of the ordinance authorizing it. They do not
either comply with the state or the federal Constitution
as to "probable cause, supported by oath or affirmation,"
nor with the general law of the state providing for affi-
davits to support arrests or prosecutions.—Code 1907,
§ 6703.

"Good reason to believe" is not the equivalent of
"probable cause for believing," as required by the stat-
ute. While this defect is probably amendable, it is in-
sufficient to .support a conviction, especially where ob-
jection was made on the trial as for this defect.—*Butler
v. State,* 130 Ala. 127, 30 South. 338; *Johnson v. State,*
82 Ala. 29, 2 South. 466; *Miles v. State,* 94 Ala. 106, 11
South. 403.

We do not mean to decide that this municipal corpo-
ration, if authorized by its charter or by statute so to
do, cannot pass valid ordinances, like the one in ques-
tion, to prevent violations or evasions of the prohibition
laws of the state or of its own valid ordinances. The
law is well settled that it may. But such ordinances
must be kept within the bounds of the state and federal
Constitutions and within the authority conferred upon
the municipality by law. An ordinance, to be valid,
must be authorized by some other law, and cannot be
valid if in conflict with the Constitution and statutes of
the state. It thus necessarily depends, for its validity,

[City of Bessemer v. Eidge.]

upon these other laws. Its own ipse dixit cannot alone make it law. Its validity is derivative, and not self-creative.

The judgment appealed from must be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and DENSON, JJ., concur.

ANDERSON, J.—I concur in the conclusion in this case; but I do so solely upon the ground that the ordinance is too broad and far-reaching, in that it makes it unlawful to have or store liquors, whether for unlawful purposes or not. I do not think that the Legislature could, under the Constitution, prohibit the full exercise of property rights, except when exercised for unlawful purposes. It is my opinion, however, that when liquors are kept or stored, either in a public or private place, for unlawful purposes, the Legislature has the right to prohibit same, and to authorize a search for and seizure of said liquors, upon proper affidavit that they are held or stored for illegal purposes. Every man's house is his castle, only so long as he uses it for lawful purposes; but, when he converts it into a den of lawlessness, then the right to search, upon proper affidavit, is not forbidden by the Constitution.—25 Am. & Eng. Ency. Law, 151, and authorities cited in note 12.

DOWDELL, C. J., and DENSON and McCLELLAN, JJ., concur in the affirmance of the judgment below upon the sole ground that the affidavit for the warrant was void, in that the basis for the affiant's belief was stated to be "good reason," rather than, and as was requisite, "probable cause," therefor. *Butler v. State,* 130 Ala. 127, 30 South. 338. They are of the opinion that, since the affidavit was void, it is entirely unnecessary to determine the validity vel non of the ordinance set forth in

[State ex rel. Garber Attorney General v. Cazalas, Sheriff.]

the record. However, the majority conclude that a decision of that inquiry is called for.

The CHIEF JUSTICE and Justices DENSON and MCCLELLAN, after careful consideration, entertain the opinion that the ordinance is valid, and hence that .the conclusion of the majority on that point is unsound. They therefore dissent, in that particular, from the opinion controlling the decision on this appeal.

